UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COCKBURN FARM LLC, | |
| Plaintiff, | |
| -against- | 23-cv-10616 (NSR) |
| HEATHER NEVILLE, NYC TREE LADY L.L.C & BUILDING ENVELOPE INTERNATIONAL LLC, | OPINION & ORDER |
| Defendants. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __10/16/2024__

NELSON S. ROMÁN, United States District Judge:

Plaintiff Cockburn Farm LLC ("Cockburn" or "Plaintiff") initiated this action November 21, 2023, alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Defendant Heather Neville ("Neville"), Defendant NYC Tree Lady L.L.C ("Tree Lady"), and Defendant Building Envelope International LLC ("Building Envelope") (together, "Defendants"). Plaintiff also requests attorney's fees and costs.

Presently before the Court is Defendant Heather Neville's Motion to Dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) as against her. For the following reasons, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are derived from the First Amended Complaint ("Complaint") and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

Plaintiff is a New York domestic limited liability company with a registered address of 75 South Riverside Avenue, Croton-On-Hudson, New York 10520. (Am. Compl ¶ 1.) Plaintiff's members are Sean Barton, an individual domiciled in New York, and Joshua Maddocks, also an individual domiciled in New York. (*Id*.) Plaintiff is located in Garrison, New York, and has

operated for over four decades. (*Id*. ¶ 8.) Plaintiff grows and sells Christmas trees. (*Id*. ¶ 9.) Plaintiff sources and sells Christmas trees from other farms throughout the United States. (*Id*. ¶ 10.) Plaintiff is a well-known Christmas tree farm, having had its Christmas trees on display at the White House. (*Id*. ¶ 11.) Plaintiff also has a wholesale side Christmas tree business. (*Id*. ¶¶ 13-14.) Plaintiff's wholesale arrangements are generally finalized in August and September, each year. (*Id*. ¶ 16.) After Plaintiff receives a wholesale Christmas tree order, Plaintiff determines the total purchase price and requires that the prospective customer make a 50% deposit to secure the order, with the remainder to be due when Plaintiff accepts delivery of the tree order. (*Id*.) Plaintiff alleges that Plaintiff and Defendants operated under such an arrangement for an order in 2021. (*Id*. ¶ 19.)

Plaintiff asserts that Plaintiff and Defendants intended to operate under this arrangement in 2022. (*Id*. ¶ 20.) Defendants placed a wholesale order for the 2022 holiday season on August 7, 2022. (*Id*.) On September 13, 2024, Neville, on behalf of Defendants, confirmed their agreement to purchase from Plaintiff 1,300 Christmas trees. (*Id*. ¶ 21.) Defendants, through Neville, agreed to pay $72,445.45, with a 50% deposit due immediately and with the balance due when the Christmas trees arrived at Cockburn Farm. (*Id*. ¶ 22.) Payment of the deposit was processed on or about September 28, 2022. (*Id*. ¶ 23.) With the order placed and the deposit paid, Plaintiff was obligated to secure the 1,300 Christmas trees for the Defendants, and Defendants were obligated to pay the remaining balance owed once the trees arrived at Cockburn Farm. (*Id*. ¶ 24.) After placing the Christmas tree order, Defendants, through Neville, communicated additional requests to Plaintiff, namely inquires about pricing for additional items like wreaths and tree stands. (*Id*. ¶ 25.) On November 2, 2022, Defendants, through Neville, requested that a portion of the Christmas trees be delivered to Phoenixville, Pennsylvania, when the Christmas trees arrived that month. (*Id*. ¶ 26.) Defendants further requested that Plaintiff make deliveries of the ordered Christmas trees

on November 20 and 22, 2022. (*Id.*) On November 23, 2022 Defendants, through Neville, instructed Plaintiff to "[l]oad that truck full" for another delivery of Christmas trees. (*Id.* ¶ 27.) Plaintiff delivered 245 Christmas trees that following day. (*Id.*) On December 6, 2022, Defendants, through Neville, ordered Plaintiff to deliver 245 Christmas trees to Connecticut. (*Id.* ¶ 29.) That same day, Defendants, through Neville, requested confirmation that Plaintiff loaded the Christmas trees for delivery. (*Id.* ¶ 30.) Plaintiff provided confirmation the following day and Neville, on behalf of the Defendants, acknowledge Plaintiff's confirmation and requested a photograph of the Christmas tree. (*Id.*) Then, on Friday, December 9, 2022 Defendants, through Neville, informed Plaintiff that they could not accept delivery of the Christmas trees that day. (*Id.* ¶ 31.) On December 12, 2022, Defendants through Neville, pressed Plaintiff to get them the Christmas trees. (*Id.*)

Plaintiff received no further communication from Defendants during the month of December. (*Id.*) Because Defendants wavered on whether they would take possession of the remaining Christmas trees, Plaintiff was not able to sell those Christmas trees to other customers. (*Id.* ¶ 39.) From December 13, 2022, through the end of December, Defendants did not respond to Plaintiff and did not advise Plaintiff of their intent not to take possession of the Christmas trees Plaintiff had ordered and been storing for Defendants. (*Id.* ¶ 40.) As a result, Plaintiff lost more than $100,000.00 in revenue. (*Id.* ¶ 41.) Plaintiff also was forced to spend $2,300.00 for storage of the Christmas trees, until they were chipped and disposed of, which further cost the Plaintiff $1,500.00.

Because of Defendants refusal to pay the remaining balance due for the Christmas trees and failure to take delivery of the Christmas trees they ordered, as they had agreed to do so, Plaintiff suffered significant labor, storage, and disposal expenses. (*Id.* ¶ 43.) Plaintiff alleges that had Defendants acted in good faith and timely disclosed their intent to not take delivery of the

remaining Christmas trees, Plaintiff could have mitigated its damages or realized a profit through reselling the Christmas trees through its retail business. (*Id.*)

Based on the foregoing, Plaintiff brings claims alleging breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiff also seeks recovery of attorney's fees and costs.

## PROCEDURAL HISTORY

On November 21, 2023, Plaintiff commenced this action against Defendants before the Putnam County Supreme Court. (ECF No. 1). Plaintiff then removed this action to federal court December 5, 2023. (ECF No. 1).  Plaintiff then filed its First Amended Complaint ("the Complaint") on February 1, 2024. On May 15, 2024, Defendant Heather Neville filed a motion to dismiss and her memorandum of law in support (the "Motion" or "Mot.", ECF No. 28). Plaintiff filed an opposition to the Motion (the "Opposition" or "Opp.", ECF No. 29). The Defendant filed a reply in further support of the Motion (the "Reply", ECF No. 30).

## LEGAL STANDARD

### A.  Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or

4

"[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff brings claims for breach of contract and breach of the implied covenant of good faith and fair dealing against the Defendants. The Court denies Neville's motion to dismiss as to Plaintiff's breach of contract claim and as to Plaintiff's request for attorney's fees and costs, and grants as to Plaintiff's implied covenant of good faith and fair dealing claim.

### A. Breach of Contract Claim

Under New York law, to determine whether an agent is personally liable for a contract courts look for whether a reasonable person would have understood that the agent was acting for a principle. *Instituto Cubano De Estabilizacion Del Azucar v. the S.S. Theotokos*, 155 F. Supp. 945, 948 (S.D.N.Y. 1957). *See also Ads Plus Advert., Inc. v. Ault*, 928 F. Supp. 2d 683, 690 (W.D.N.Y. 2013). If the agency relationship is not disclosed, the agent will be held personally liable for the signed contract. *DeAngelis v. Timberpeg E., Inc.,* 51 A.D.3d 1175, 858 N.Y.S.2d 410, 416 (3d Dep't 2008) (citing *McClure v. Cent. Trust Co. of New York,* 165 N.Y. 108, 128, 58 N.E. 777 (N.Y.1900)).

The Complaint alleges Neville's extensive involvement in procuring the order of Christmas trees from in or around August 2022 through January 2023. (Am. Compl. Ex. 1.) Throughout the entirety of Plaintiff's interactions with the Defendants, Neville was the main contact. (Am. Compl. ¶¶ 20, 29.) Neville did not explicitly articulate that she was working on behalf of Tree Lady and Building Envelope. As the Opposition notes, while communicating with Plaintiff, Neville consistently acted as if she was a party to the agreement, stating at various points: "I'll let you know when I need delivery," "I can definitely use at least half of the [order] that week," "I have to wait to take more trees," "I can take that load today," "I cant [sic] take those trees today." (Am. Complaint. Ex. 1 at 7, 19, and 22.) The invoice for the Christmas trees was billed to Tree Lady. (Am. Compl. Ex. 2.) Neville processed the first payment for the Christmas trees. (Am. Compl. 1 at 9.)

On one hand, Neville's extensive involvement in the formation and partial execution of the contract between Plaintiff and the Defendants could be construed as an agent simply carrying out the goals of her principals. Similarly, an agent can process payment on behalf of her principal. On the other hand, the crucial question is what a reasonable party would conclude from the totality of Neville's actions. Here, it is likely that a reasonable party would believe Neville to be a party to the contract. First, based on the allegations of the Amended Complaint, Neville did not ever advise Plaintiff that she was working on behalf of the Defendants as an agent, pointing in favor of finding Neville personally liable. *See DeAngelis v. Timberpeg E., Inc.,* 51 A.D.3d 1175. Additionally, that Neville was the sole party to engage Plaintiff could reasonably suggest that Neville was a party to the contract and responsible for its formation and execution, especially where she never positioned herself to be functioning as an agent. Moreover, when Neville discussed the Christmas trees order she constantly referenced herself rather than the corporate defendants could reasonably be

interpreted as Neville being the party directly contracting with Plaintiff. (Opposition at 12.) While the Reply is correct to note that referencing oneself as "I" in communications with another party does not, by itself, justify imposing individual liability on an agent (Reply at 4), the Reply does not address how such language, taken together with the facts discussed *supra*, could lead a reasonable party to find Neville to be a party to the contract. (Reply at 4-5.) Thus, while there is a general rule of non-liability of an agent for a disclosed principal, considering the totality of the Complaint's factual allegations, the Court finds that a reasonable person could find Neville to be a party to the contract. Therefore, the Court finds that Plaintiff has pled a plausible claim against Neville and Defendant's motion to dismiss the breach of contract claim is denied.

### B.  Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's claim for violation of the implied covenant of good faith and fair dealing must be dismissed as it is duplicative of Plaintiff's breach of contract claim. A claim is likely duplicative of another claim where the harm alleged and relief sought are identical. *See Gay v. Garnet Health*, No. 23-CV-06950 (NSR), 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) (dismissing negligence claim as duplicative of breach of fiduciary duty/confidentiality where harm alleged was identical); *see also Beck v. Metro. Bank Holding Corp.*, No. 2:23-CV-07564 (NJC) (ARL), 2024 WL 3849461, *18 (E.D.N.Y. Aug. 16, 2024) (granting motion to dismiss where negligence claim was duplicative of breach of contract claim, noting that the damages asserted between the two claims were the same).

Here, for both of Plaintiff's claims, the same relief is requested: "Plaintiff therefore is entitled to an award of damages, including, without limitation, consequential damages, lost profits, and other damages within the Court's jurisdictional limits, in amounts to be determined at trial."

(Am. Compl. ¶¶ 54, 64.) Additionally, Plaintiff alleges identical harm: "Plaintiff was deprived the opportunity to resell the precut Christmas trees through its retail business. Had Plaintiff been able to do so, it could have sold each precut tree for approximately $175, and thus realized a sizable profit based on revenues exceeding $100,000." (Am. Compl ¶¶ 53, 63.)

The Opposition attempts to argue that the underlying conduct is distinct because "Count II is separately predicated on the Defendants' collective failure to provide timely notice of their intent not to accept delivery of the complete wholesale Christmas tree order, Count I concerns the Defendants' failure to pay the outstanding balance on the tree order." (Opposition at 14.) This is partially compelling; however, the issue remains that the alleged harm and relief sought are identical, ultimately favoring a finding that Plaintiff's implied covenant of good faith claim is duplicative of Plaintiff's breach of contract claim. *See Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.,* 259 F. Supp. 3d 16, 37 (S.D.N.Y. 2017), aff'd, 712 F. App'x 85 (2d Cir. 2018) (dismissing claim for breach of the implied covenant of good faith and fair dealing for impermissibly duplicating breach of contract claim, noting that when  "a plaintiff claims a breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim and seeking identical damages for the breach, the claim for the breach of the covenant of good faith and fair dealing must be dismissed as duplicative of the breach of contract claim"); *see also SJN Properties LLC v. Harleysville Ins. Co.*, No. 22-CV-7227 (JGLC), 2024 WL 3104346 (S.D.N.Y. June 24, 2024) (same).  It may be that Plaintiff can amend its complaint to demonstrate distinct harm and relief to support a separate claim for a violation of the implied covenant of good faith, but at this point Plaintiff's claim is dismissed without prejudice for being duplicative of its breach of contract claim.

**C. Request for Attorney's Fees and Costs**

Neville's motion to dismiss Plaintiff's request for attorney's fees and costs is denied as premature at the pleading stage. *OneWest Bank N.A. v. Lehman Bros. Holding Inc.*, No. 14-CV-8916 JMF, 2015 WL 1808947 (S.D.N.Y. Apr. 20, 2015) (denying motion to dismiss the plaintiff's request for attorney's fees at the pleading stage as premature). Whether to award attorney's fees is a fact intensive inquiry that requires an established record for adjudication; dismissal at the pleading stage is therefore inappropriate. *Id*. Accordingly, Neville's motion to dismiss Plaintiff's request for attorney's fees and costs is denied without prejudice.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Heather Neville's motion to dismiss as to Plaintiff's first claim for breach of contract and as to Plaintiff's request for attorney's fees and costs, and GRANTS as to Plaintiff's second claim for breach of the implied covenant of good faith and fair dealing.

Plaintiff is granted leave to file an Amended Complaint by November 14, 2024. Plaintiff is advised that the Amended Complaint will replace, not supplement, the Complaint, and so any claims that it wishes to pursue must be included in, or attached to, the Amended Complaint. Should Plaintiff file an Amended Complaint, the Defendants Heather Neville, NYC Tree Lady L.L.C., and Building Envelope International LLC are directed to answer or otherwise respond by December 5, 2024. If Plaintiff fails to file an Amended Complaint within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice. If no Amended Complaint is timely filed, Defendants Heather Neville, NYC Tree Lady L.L.C., and Building Envelope International LLC are directed to file their Answers by December 5, 2024, and the parties

are directed to complete and file a Case Management Plan and Scheduling Order (blank form attached) by December 19, 2024.

The Clerk of Court is respectfully directed to terminate the motions at ECF No. 28.


Dated:    October 16, 2024                                    SO ORDERED:
          White Plains, New York

_____
                                                NELSON S. ROMÁN
                                            United States District Judge

10

UNITED STATES DISTRICT COURT                          Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x


                                        **CIVIL CASE DISCOVERY PLAN**

                    Plaintiff(s),          **AND SCHEDULING ORDER**

        - against -



                    Defendant(s).          _____ CV _____ (NSR)


-------------------------------------------------------------x


  This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):


1.      All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The parties are free to withhold consent without adverse substantive consequences.  (If all parties consent, the remaining paragraphs of this form need not be completed.)


2.      This case [is] [is not] to be tried to a jury.


3.      Joinder of additional parties must be accomplished by _____.


4.      Amended pleadings may be filed until _____.

5.      Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than _____.

7.      Non-expert depositions shall be completed by _____.

        a.      Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

        b.      Depositions shall proceed concurrently.

        c.      Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.     Any motions shall be filed in accordance with the Court's Individual Practices.

16.     This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.     The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

       _____

                                              _____

                                              Nelson S. Román, U.S. District Judge